IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KARL W. WOLFE,** | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 06-79 Erie |
| | ) | District Judge McLaughlin |
| **LUIS W. LU, M.D.,** | ) | Magistrate Judge Baxter |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the motion to dismiss and motion to strike [Document # 7] be granted in part and denied in part. Specifically, the motion to dismiss should be denied in all respects; the motion to strike the jury demand should be granted; and the motion to strike allegations against Defendant Dr. Lu individually should be denied.


**II.    REPORT**

Plaintiff, represented by counsel, filed this action under the Employee Retirement Income Security Act (hereinafter referred to as "ERISA") for damages stemming from the denial by Defendants of Plaintiff's claims for retirement benefits under a profit sharing plan. Named as Defendants are the Luis W. Lu, M.D., P.C. Profit Sharing Plan and Trust, formerly known as the Luis W. Lu, M.D., P.C. Money Purchase Pension Plan and Trust (hereinafter both referred to as "the Plan") and Luis W. Lu, M.D.  The complaint contains three separate counts all under ERISA: at Count I, reimbursement of retirement benefits; at Count II, Breach of Fiduciary Duty; and at Count III, Failure to Report and Disclose.

### A. Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted.

Plaintiff has attached several exhibits to his complaint and Defendants have attached many of those same exhibits to their motion to dismiss. The use of these exhibits by this Court does not convert Defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment.").

### B. The Allegations of the Complaint

Plaintiff alleges that he worked as a licensed optometrist in the facilities of Defendant Dr. Luis W. Lu. Between 1985 and 1989, Plaintiff worked for Defendant Dr. Lu as an independent contractor. Document # 1, Complaint, ¶ 7-8. Beginning in 1990, Plaintiff became an employee of Defendant, and, as such, Plaintiff was provided with W-2 Wage statements, and

was enrolled in the Plan. Id. at ¶ 11-12. Between 1990 and 2001, Plaintiff Dr. Wolfe participated in the Plan and obtained vested retirement benefits. Id. at ¶ 13.

In 1992, Defendant Dr. Lu amended the Plan to specifically exclude optometrists. Id. at ¶ 15. The only optometrist employed by Defendant Dr. Lu was Plaintiff. Id. at ¶ 16. According to Plaintiff, Defendant's sole motivation in this regard was to avoid paying plan benefits to Plaintiff. Id. at ¶ 15-16. Plaintiff was not notified by either Defendant Dr. Lu or the Plan that the Plan had been amended to exclude optometrists and that he was no longer eligible to participate in the Plan. Id. at ¶ 17. Plaintiff was not provided with a copy of the Summary Plan Description, a Summary of Material Modification to the Plan, annual reports, or other documents regarding the Plan. Id. at ¶ 18. Between 1992 and 2001, Plaintiff received annual statements from the Plan which indicated that his retirement benefits were accumulating. Id. at ¶ 14 and Exhibit A. Relying on those annual statements and representations made by the Plan and Defendant Dr. Lu, Plaintiff believed he was a plan participant. Id. at ¶ 19.

As of July 2001, Plaintiff's employment with Defendant ceased. Id. at ¶ 21. An Annual Statement issued May 31, 2002 reflected that Plaintiff's retirement account held $29,161.58. Id. at ¶ 22 and Exhibit B. Around February 7, 2003, Plaintiff requested a lump sum distribution of his vested account balance from the Plan. Id. at ¶ 23 and Exhibit C. By letter dated March 31, 2003, Defendant Dr. Lu informed Plaintiff that he would not be entitled to a distribution because he was not an employee. Id. at ¶ 24 and Exhibit D. The letter reads, **in its entirety**:

> After reviewing the Profit Sharing Plan and Trust Plan written by the Actuarial consultants and plan administrators Howard Simon & Associates effective June 1, 1989, it was called to my attention that a private contractor, as you claim you were, is not in the list of Conditions of Eligibility. In section 3.1 of the Plan, it provides that only employees are eligible for participation in the Plan.
>
> After legal counseling, it does appear you are not entitled to the distribution of vested benefits. However, if you feel you are entitled to such benefits, it is necessary that you send a letter indicating that you were indeed an employee of the clinic.

Id. Interestingly, the letter does not mention the 1993 amendment to the Plan which excluded Plaintiff's participation in it.

By letter dated April 8, 2003, counsel for Plaintiff responded:

3

> It has recently come to my attention that Dr. Wolfe has submitted a request to have his vested pension benefits rolled over out of the Luis W. Lu, M.D., P.C. Profit Sharing Plan & Trust, and into Dr. Wolfe's SEP. I am enclosing copies of Dr. Wolfe's roll over request, along with the March 31, 2003, response that he has received from Dr. Lu. Despite Dr. Wolfe's vested participation in the subject plan, and despite the W-2 forms that you recently provided which reflect Dr. Wolfe's employment status from 1990 until the termination of that relationship in 2001, Dr. Lu seems intent on playing games with administration of Dr. Wolfe's pension benefits. We do not intend to play along.
>
> As I am sure you are aware, employment benefits such as pension plans are subject to the comprehensive statutory and regulatory provisions of ERISA. If Dr. Wolfe's roll over request is not processed immediately, I will refer Dr. Wolfe to an ERISA specialist for appropriate federal court action. I will be surprised if the law does not provide for significant penalties (recovery of counsel fees, treble damages, and the like) for breach of fiduciary duty and/or willful violation of ERISA rules in connection with plan administration. I hope that this matter can be resolved without necessitating a federal court action. Please advise.

Document # 17, Exhibit A.

Then, on June 9, 2003, the Plan provided Plaintiff with a check in the amount of $7,840.17. Document # 1, at ¶ 25 and Exhibit E.

A year later on June 22, 2004, Plaintiff through a letter from his counsel sought documents relating to the Plan. Id. at Exhibit F. By letter dated July 20, 2004, Attorney Grasso representing Defendants replied to Plaintiff's requests for documentation with copies of the most recent Amended Profit Sharing Plan and Trust, an Amended Profit Sharing Plan and Trust Summary Plan Description, and an IRS determination letter dated July 20, 1995. Id. at ¶ 28 and Exhibits G, H, I and J. The letter stated: "the foregoing is not intended as a definitive or final response to a claim by Dr. Wolfe but rather an indication of what we have ascertained to date. We will await the receipt of your formal claim and will then proceed as appropriate." Id. Plaintiff alleges that he had never received these documents before. Id. at ¶ 29.

By letter to Attorney Grasso dated August 12, 2004, Plaintiff again through his counsel renewed his request and claim for benefits. Id. at ¶ 30 and Exhibit K. The letter reads, in its entirety:

> Thank you for your July 20, 2004 letter.
>
> Rather than address the details, let me just advise that we disagree with your entire characterization of the circumstances and rather than debate the matter with you, we intend to ask the U.S. Department of Labor and the Pennsylvania Department of Labor and Industry to make an independent factual determination

> of the circumstances.
>
> By this letter, Dr. Wolfe is renewing his request and claim for benefits and hereby reserves all rights with respect to the claims made in my June 22, 2004 letter to Dr. Lu.

Id.

By letter dated August 23, 2004, Attorney Grasso responded to Plaintiff's counsel indicating that he would treat Plaintiff's August 12, 2004 letter as a formal claim for benefits under the Plan. Id. at ¶ 31 and Exhibit L. Grasso's letter further indicated that a response to the request would be issued "within the time provided by the Plan's claims procedure." Id.

On September 3, 2004, Plaintiff informed Attorney Grasso that the June 22, 2004 letter was a claim for review of the denial by the Plan and that the Plan was responsible for providing a decision to Plaintiff before October 22, 2004. Id. at ¶ 32. As of the filing of the complaint in this action, Plaintiff alleges that no such decision has been provided to Plaintiff. Id. at ¶ 33.

On February 7, 2005, Plaintiff requested that the U.S. Department of Labor investigate his claim for benefits. Id. at ¶ 34 and Exhibit M. By letter dated July 18, 2005, Ursula Wasserback of the Department of Labor responded to Plaintiff's letter:

> According to information provided by Howell and Company, Inc., the third party administrator, in 1992 Dr. Lu instructed the pension consultant, Howard Simon & Associates to exclude optometrists from [...] the profit sharing plan. There was an amendment to the plan, and Dr. Wolfe was informed that he was no longer eligible to participate in the profit sharing plan. For several years, contributions from the profit sharing plan were contributed to Dr. Wolfe's profit sharing account in error. The error was corrected, and Dr. Wolfe received a corrected report for his account which reflected the fact that he was not eligible to receive contributions after the plan was amended.

Id. at Exhibit N. The letter further explained the Plaintiff could file a civil action in either state or federal court. Id.

Thereafter, on March 30, 2006, Plaintiff filed the instant action.

### C.     The 1993 Amendment to the Plan

First, Defendants argue that Plaintiff's claim at Count I for the enforcement of benefits should be dismissed because Plaintiff has received the full value of his vested benefits under the

5

Plan. Defendants argue that Plaintiff was not entitled to any benefits beginning on June 15, 1993, because on that date the Plan was amended to exclude Plaintiff's participation in it. In opposition, Plaintiff argues that the 1993 amendment was not valid.

ERISA does not require employers to establish employee benefit plans nor does it require that all employees are entitled to participate equally in plans offered by their employers. Bauer v. Summit Bancorp, 325 F.3d 155 (3d Cir. 2003). Where an employer offers an employee benefit plan, it must be administered in accordance with the express terms of the plan itself. 29 U.S.C. § 1104(a)(1)(D). The statute provides that the rights of the parties are to be determined by the documents on file with the Plan. Egelhoff v. Egelhoff, 532 U.S. 141, 150 (2001) (ERISA requires that plans be administered, and benefits be paid, in accordance with plan documents).

So then, this Court must examine the Plan itself. The issue here is not whether the Plan was amended to exclude optometrists in June of 1993; instead, the issue is whether the amendment was valid as to Plaintiff. Plaintiff claims that the amendment was not valid because he was not notified of the 1993 amendment until July 20, 2004, three years after his employment had ended. In support of this argument, Plaintiff cites to the fact that for several years following the 1993 amendment the Plan continued to contribute monies to Plaintiff's retirement account and continued to provide Plaintiff with Annual Statements indicating those contributions.[1]

Both parties have provided this Court with the Plan adopted in June of 1993.

---

[1] The Annual Statements are attached as Exhibits to the complaint and reveal account balances of:
        $ 4282.35 on May 31, 1993;
        $ 4310.87 on May 31, 1994;
        $ 4910.94 on May 31, 1995;
        $ 6119.40 on May 31, 1996;
        $12,422.40 on May 31, 1997;
        $23,438.60 on May 31, 1998;
        $28,765.67 on May 31, 1999;
        $34,845.68 on May 31, 2000;
        $32,619.38 on May 31, 2001; and
        $29,161.58 on May 31, 2002.

Document # 1, Exhibits A and B.

However, this is not the relevant plan for this Court's current inquiry. In order to determine whether the 1993 amendment was properly made, this Court must look to the terms of the preceding Plan regarding procedures for amendment and notification to participants. That preceding Plan has not been provided to this Court.

As such, it is impossible at this stage of the proceedings on a motion to dismiss to determine whether the 1993 amendment to the Plan was valid. The motion to dismiss should be denied in this regard.

### D. Exhaustion

Next, Defendants argue that Count I[2] of the complaint for the enforcement of benefits should be dismissed because Plaintiff has failed to exhaust his remedies under the Plan. Under ERISA, internal administrative remedies as outlined in the plan at issue must be exhausted prior to bringing suit in federal court. Harrow v. Prudential Insurance Company, 279 F.3d 244 (3d Cir.2002) ("Except in limited circumstances [...], a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan.") quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990); Zipf v. AT&T Company, 799 F.2d 889 (3d Cir.1986). Courts require exhaustion of administrative remedies because trustees "are granted broad fiduciary rights and responsibilities under ERISA [...] and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes" (Kilkenney v. Guy C. Long, Inc., 288 F.3d 116, 123 (3d Cir. 2002) quoting Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980)), as well as "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned"(Harrow, 279 F.3d at 249, quoting Amato, 618 F.2d at 567). "The courts generally favor compliance with

---

[2] Under ERISA, only claims to enforce the payment of benefits must be exhausted. There is no exhaustion requirement for breach of fiduciary duty or for failure to disclose. See D'Amico v. CBS Corp., 297 F.3d 287 (3d Cir. 2002).

exhaustion provisions because they can often resolve disputes without court involvement; or alternatively the process crystalizes the issues, and the court has the benefit of the reasoning of those entrusted with implementing the plan." Henshaw v. Roofers Local # 4 Pension Fund, 2006 WL 2715138 at *2 (D.N.J. Sept. 22, 2006).

      Here, Section 10.6 of the Plan provides the claims procedures for participants. Document # 1, Exhibit H, page 48-49. A claim for benefits must be filed on forms supplied by the Plan Administrator. Id. Generally, written notice of the disposition of the claim must be furnished to the claimant within ninety days after the application for benefits is filed. Id. In the event of the denial of benefits, the reasons for the denial must be specifically set forth in writing, pertinent provisions of the Trust must be cited, a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information is necessary shall be furnished, any appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his claim for review shall be provided. Id.

      Section 10.7 provides for the appeal procedures. Id. Under the Plan, any beneficiary who has been denied a benefit is entitled to request a review by the Plan Administrator, review pertinent documents, and support issues and comments in writing to the Plan Administrator. Id. This Claims Review must be made within sixty days after receipt of the written denial of the claim. Id. Thereafter, the Plan Administrator shall schedule an opportunity for a full and fair hearing of the issue. Id. A decision following such a hearing shall be made within sixty days after the Plan Administrator receives a request for review unless special circumstances require an extension of time for processing the claim, in which case a decision shall be rendered as soon as possible, but not later than one-hundred twenty days after the receipt of a request for review. Id. Written notice of such an extension shall be furnished to the claimant prior to the commencement of the extension. Id. The decision on review shall be in writing and shall include specific reasons for the decision written in a manner calculated to be understood by the claimant as well as specific references to the pertinent Trust provisions on which the decision is based. Id.

In this case, Plaintiff filed his request for a distribution of the account on February 7, 2003. Document # 1, at ¶ 23, Exhibit C. By letter dated March 31, 2003, Defendant Dr. Lu informed Plaintiff that his request for benefits was denied because Plaintiff was not an employee. Id. at Exhibit D. Under the terms of the Plan, Plaintiff had sixty days following the receipt of the denial in which to request review. By letter dated April 8, 2003, counsel for Plaintiff contested the denial of benefits. Document # 17, Exhibit A. Then, on June 9, 2003, the Plan issued a check to Plaintiff in the amount of $7,840.17 (despite previously indicating that Plaintiff would not be entitled to any benefits). Document # 1, at Exhibit E.

According to the record presently before this Court, the next communication between the parties occurred one year later. In June of 2004, Plaintiff's counsel contacted Defendant advising that Plaintiff had retained counsel "in connection with his participation and claim for benefits" under the Plan. Id. at Exhibit F. Further, the letter requested Plan documents and indicated that "it is our intention on behalf of Dr. Wolfe to determine his entitlement to benefits under the Plan or predecessor plans that were operated by your P.C. and to be certain that those benefit payments are paid promptly and fully." Id.

At this early stage of the proceedings, on this limited record, it appears that neither party has followed the letter of the Plan as to the exhaustion of administrative remedies. And, given the allegations of the complaint that Plaintiff did not receive the Plan documents outlining the administrative process until July 20, 2004, dismissal is premature at this time.

Accordingly, the motion to dismiss should be denied.

### E.     Breach of Fiduciary Duty

Next, Defendants move for the dismissal of Count II of the complaint arguing that because Plaintiff has an adequate remedy in his claim for the recovery of benefits at Count I, his breach of fiduciary duty claim should be dismissed as the relief is duplicative. In the complaint at Count II, Plaintiff seeks "the plan benefits to which he is entitled, including, but not limited to, such other equitable, remedial relief and attorneys' fees and costs which the Court deems

appropriate." Document # 1, page 9.

Pursuant to section 1132(a) of ERISA, a plan participant may have a cause of action for breach of fiduciary duty. See Bennett v. Prudential Insurance Company, 192 Fed.Appx. 153, 157 (3d Cir. 2006) citing Bixler v. Central Pennsylvania Teamsters Heath & Welfare Fund, 12 F.3d 1292, 1299-1300 (3d Cir. 1993). This section permits a beneficiary to bring an action "... to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132 (a)(3)(B). Defendants argue that because Plaintiff has an adequate remedy in his claim for the recovery of benefits, his breach of fiduciary duty claim should (recovery upon which would inure to the benefit of the Plan as a whole) be dismissed. The critical issue before this Court then is whether these two claims are mutually exclusive.

In Varity Corp. v. Howe, 516 U.S. 489 (1996), the Supreme Court discussed the interplay between the subsections of 29 U.S.C. § 1132. The Court opined that two of the subsections of § 1132 (including § 1132(a)(3)) act as "catchalls" - the structure of which suggests that these provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 1132 does not elsewhere adequately remedy. Further: "thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'." Varity, 516 U.S. at 515.

In Ream v. Frey, 107 F.3d 147 (3d Cir. 1997), the Third Circuit applied Varity in analyzing whether Ream could recover as an individual beneficiary:

> We emphasize, therefore, that a court must apply ERISA [§1132(a)(3)(B)] cautiously when an individual plan beneficiary seeks appropriate equitable relief. Such caution would be consistent with the concerns the Supreme Court expressed in Varity about a court being too expansive in granting relief.

Ream, 107 F.3d at 152-153 (internal quotations and footnote omitted).

The Third Circuit has not expressly addressed the issue presented here as to whether these two claims may be brought simultaneously. However, the issue has been addressed by many district courts within our circuit with differing results. Compare Smith v. Thomas

10

Jefferson University, 52 F.Supp.2d 495, 498 n.4 (E.D. Pa. 1999) (observing that if plaintiff were to proceed on claim under § 1132(a)(1)(B), it would be necessary to dismiss claim under § 1132(a)(3)); Emil v. UNUM Life Insurance Company of America, 2003 WL 256781 (M.D. Pa. 2003) (specific remedy for wrongful denial of benefits made it inappropriate for plaintiff to pursue overlapping breach of fiduciary duty claim); Post v. Hartford Life & Accident Insurance Company, 2002 WL 31741470 (since plaintiff's claims under § 1132(a)(1)(B) provided appropriate relief, claim under § 1132(a)(3) seeking equitable relief dismissed); Feret v. Corestates Financial Corp., 1998 WL 426560, at * 11 (E.D. Pa. 1998) (because plaintiff had available remedy other than that provided by §1132(a)(3) and sought such relief, equitable relief not appropriate under §1132(a)(3)(B)), with Tannenbaum v. UNUM Life Insurance Company of America, 2004 WL 1084658, at * 4 (E.D. Pa. 2004) (at motion to dismiss stage, plaintiff could simultaneously seek relief under both provisions); Nicolaysen v. BP Amoco Chemical Company, 2002 WL 1060587, at * 2 (E.D. Pa. 2002) (dismissal of breach of fiduciary duty claims was premature at the motion to dismiss stage, but could be reasserted by Defendants in a later motion for summary judgment); Moore v. First Union Corp., 2000 WL 1052140 (E.D. Pa. 2000) (language of Varity not totally preclusive of simultaneous claims; dismissal would be premature at the motion to dismiss stage); and Parente v. Bell Atlantic-Pennsylvania, 2000 WL 419981, at * 3 (E.D. Pa. 2000) (language of Varity does not mandate dismissal of § 1132(a)(3) claims where plaintiff seeks simultaneous relief under § 1132(a)(1)(B)).

      This Court agrees with the reasoning as laid out by the court in Parente:

> Instead of a bright-line rule, Varity requires an inquiry into whether "Congress provided adequate relief for a beneficiary's injury." I do not believe that this inquiry is limited, as defendant and some courts suggest, to whether plaintiff merely has a viable claim under § 1132(a)(1)(B) (or another ERISA remedial section) that *could* lead to relief. Rather, Varity requires a determination of whether the relief provided by an alternative ERISA section *in fact* "provide[s] adequate relief for a beneficiary's injury." Put differently, under Varity, a plaintiff is only precluded from seeking equitable relief under § 1132(a)(3) when a court determines that plaintiff *will certainly receive or actually receives* adequate relief for her injuries under § 1132(a)(1)(B) or some other ERISA section.

Parente, 2000 WL 419981, at * 3 (citations omitted, emphasis in original). The court found that

11

such a determination could not be made on a motion to dismiss since it was not clear at that stage of the proceedings whether § 1132(a)(1)(B) would in fact provide the plaintiff with adequate relief. The court stated:

> [o]nly when the judicial process established [the] extent of the relief provided to plaintiff by § 1132(a)(1)(B) may the Court proceed to the question of whether (and what kind of) equitable relief under § 1132(a)(3) is appropriate.

Id.; see also Tannenbaum, 2004 WL 1084658, at *4 (holding that plaintiff can simultaneously seek relief under both provisions since "at this stage, we cannot know whether plaintiff will be able to prove his entitlement to benefits under § 1132(a)(1)(B)".). This Court concludes that the holding of Varity does not mandate dismissal of a § 1132(a)(3)(B) claim whenever a § 1132(a)(1)(B) claim is also brought. At this stage of the proceedings, Plaintiff should be allowed to pursue both claims.

Accordingly, Defendants' motion to dismiss Count II should be denied at this stage of the proceedings.

### F.     Failure to disclose

Defendants move to dismiss Count III of the complaint because Plaintiff fails to state a claim upon which relief may be granted. This Court disagrees.

Plaintiff alleges that Defendants failed to disclose numerous documents to the Plaintiff, not the least of which is the 1993 amendment to the Plan which purported to exclude Plaintiff's participation in the Plan.

A "fiduciary's duty [is] to deal fairly with its beneficiary and more specifically, to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protections." In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation, 242 F.3d 497, 509 (3d Cir. 2001). Moreover, "any provision of a plan subject to ERISA that establishes a benefit is a material term of the plan. Curcio v. John Hancock Mutual Life Insurance Company, 33 F.3d 226, 237 (3d Cir. 1994). The Third Circuit has held that remedies are available under

ERISA for violations of reporting and disclosure requirements "where the plaintiff can demonstrate the presence of 'extraordinary circumstances'." Ackerman v. Warnaco, Inc., 55 F.3d 117, 124 (3d Cir. 1995). "'Extraordinary circumstances' generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." Jordan v. Federal Express Corp., 116 F.3d 1005, 1011 (3d Cir. 1997).

The facts as alleged in the complaint support such extraordinary circumstances. While pleading these allegations is far removed from proving them, Plaintiff should be allowed the opportunity to do so.

Accordingly, Defendants' motion to dismiss should be denied in this regard.

### G. Demand for Jury Trial

Defendants move to strike Plaintiff's demand for a jury trial. This motion should be granted.

The Third Circuit has held that actions to recover benefits under 29 U.S.C. § 1132 are essentially equitable in nature and therefore a plaintiff is not entitled to a jury trial. Pane v. RCA Corp., 868 F.2d 631, 636-37 (3d Cir.1989); Cox v. Keystone Carbon Corrections Officer., 894 F.2d 647, 649-50 (3d Cir.1990); Erbe v. Billeter, 2006 WL 3227765 (W.D. Pa. 2006). As Plaintiff indicates that he may have legal remedies against Defendants following discovery, the request for a jury trial should be dismissed without prejudice and the issue may be revisited at some future juncture.

### H. Defendant Dr. Lu

Finally, Defendants request that the allegations in the complaint which identify Dr. Lu individually be stricken. However, at this early stage of the litigation, Dr. Lu's role in the actions complained of is not clear. This request is premature and should be denied at this time.

### III. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the motion to dismiss and motion to strike [Document # 7] be granted in part and denied in part.  Specifically, the motion to dismiss should be denied in all respects; the motion to strike the jury demand should be granted; and the motion to strike allegations against Defendant Dr. Lu individually should be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. _____

 

                                                      S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated:  February 23, 2007